# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| VICCI KINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 10-2238 |
| KEITH ANGLIN, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

In October 2010, Plaintiff Vicci Kinney filed a Complaint (#1) against Defendants Keith Anglin, Cory Foster, Michael Randle, Gladyse Taylor, and Jim Reinhart.[1] All Defendants, except Defendant Taylor, are named in their individual capacity. In addition, Defendants Anglin and Foster are named in their official capacities for the limited purpose of implementing equitable relief. Defendant Anglin is the acting Warden of the Danville Correctional Center, and Defendant Foster is the Director of Community Affairs for the Office of the Governor of the State of Illinois. Last, Defendant Taylor is named solely in her official capacity as acting Director of the Illinois Department of Corrections for the purpose of implementing equitable relief. Plaintiff brings three counts under 42 U.S.C. § 1983: Count I alleges violation due process, Count II alleges violation of equal protection on the basis of gender, and Count III alleges retaliation in violation of the First Amendment. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

Defendants filed Defendants' Rule 12(b)(6) Motion to Dismiss Counts I and III (#12). Defendants move this Court to dismiss Plaintiff's Count I against all named Defendants, and Plaintiff's Count III against Defendants Taylor, Reinhard, and Foster. As such, Defendants' motion does not ask the Court to dismiss Count II, which is only brought against Defendant Anglin, or Count III with respect to Defendant Anglin. Plaintiff filed a Memorandum of Law in Response to Defendants' Motion to Dismiss (#18). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B),

---

[1] Plaintiff indicates she agrees to dismiss Defendant Randle from the complaint.

that Defendants' Rule 12(b)(6) Motion to Dismiss Counts I and III **(#12)** be **DENIED** with respect to Count I and **GRANTED** with respect to Count III. Also, given agreement of the parties, Defendant Randle should be dismissed from the suit in its entirety.

### I. Background

The following background is taken from the complaint. Plaintiff was formerly employed by Lake Land College. Lake Land College had a contract with the Illinois Department of Corrections (hereinafter "IDOC") to provide certain vocational education services to inmates. Through this arrangement, Plaintiff was assigned to teach courses at the Danville Correctional Center.

On April 10, 2009, Plaintiff complained to the Office of the Executive Inspector General that she believed a high ranking official at the Danville Correctional Center had misappropriated funds. On April 13, Defendant Anglin, the acting Warden of the Danville Correctional Center, entered an order prohibiting Plaintiff from entering the prison. Defendant Anglin then issued a directive that Plaintiff was "permanently restricted from visiting all facilities in the State of Illinois," effectively barring her from work in any prison in the state. (#1, p. 3, ¶ 14.) As a direct result of this "stop order," Plaintiff was terminated from her position at Lake Land College, effective May 11, 2009.

On December 30, 2009, Plaintiff wrote to Defendant Reinhart, Chief of Staff of the Director of the IDOC. Plaintiff sought review of Defendant Anglin's "stop order." Plaintiff indicated that she was seeking employment with the Newport Federal Facility, and that the "stop order" would prohibit her from obtaining this position. On February 8, 2010, Defendant Reinhart responded that the "stop order" would not be rescinded.

Plaintiff further notes that, under the terms of a collective bargaining agreement in effect at Lake Land College, Plaintiff could have exercised "bumping rights" to obtain a position with Lake Land College to teach at Vandalia Correctional Center. Because the "stop order" is still in effect, Plaintiff was not able to take this position.

2

## II. Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must give fair notice of what the claim is and the grounds upon which it rests. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). However, fair notice is not enough by itself; in addition, the allegations must show that it is plausible, rather than merely speculative, that the plaintiff is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (requiring plausible grounds for inferences if those inferences are to sustain a complaint). In considering the plaintiff's factual allegations, the Court should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The application of the notice pleading standard is a context-specific task, in which the height of the pleading requirement is relative to circumstances. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Furthermore, where a plaintiff voluntarily provides unnecessary facts in her complaint, a defendant may use those facts to demonstrate that the plaintiff is not entitled to relief. *Tamayo*, 526 F.3d at 1086.

A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Id*. (quoting *Kolupa v. Roselle Park Dist*., 438 F.3d 713, 715 (7th Cir. 2006)).

### III. Discussion

Defendants' motion to dismiss asks this Court to dismiss Count I against all defendants, and Count III against Defendants Taylor, Reinhard, and Foster. Plaintiff brings Count I for violation of her right to procedural due process. Plaintiff brings Count III for retaliation in violation of her First Amendment rights. Both counts are brought under 42 U.S.C. § 1983.

*A. Count I - Procedural Due Process*

Plaintiff alleges that Defendants violated her right to procedural due process. Specifically, she contends that the "stop work" order, which is still in effect, unconstitutionally interferes with her occupational liberty. Defendants seek to dismiss this count based on the following arguments: (1) Plaintiff has not stated a claim for deprivation of a liberty interest for which Defendants can provide relief; (2) Count I is barred by qualified immunity; and (3) Plaintiff has failed to allege facts that establish her right to bring this suit against Defendants Reinhart and Taylor in their individual capacities, or Defendants Anglin and Taylor in their official capacities.[2]

*1. Plaintiff's Claim for Deprivation of a Liberty Interest Without Procedural Due Process*

Plaintiff brings a claim for deprivation of occupational liberty without due process. To prevail in a claim for deprivation of occupational liberty, a plaintiff must show that she has been stigmatized by the defendant's conduct, that the stigmatizing information was publicly disclosed, and that she has suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991); *Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994). The heart of a claim of a violation of occupational liberty is

---

[2]Defendants additionally argue that Plaintiff's complaint does not state a claim for deprivation of a property interest without procedural due process. Plaintiff concedes she has not been deprived of any property interest.

4

that "circumstances of discharge, at least if they were publicly stated, had the effect of blacklisting the employee from employment in comparable jobs." *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987). If a state government formally bans a person from a whole category of employment, this constitutes an infringement on occupational liberty. *Id*.

Plaintiff argues that she has stated a claim for deprivation of occupational liberty because the "stop order" is a stigma or disability that forecloses employment opportunities in jobs that are comparable to the one she held at Lake Land College. Defendants respond that Plaintiff has failed to state a claim for deprivation of occupational liberty because Plaintiff has not adequately alleged stigma, public disclosure of any stigmatizing statement, or tangible loss of employment opportunities resulting from the "stop order." Last, Defendants argue that even if Plaintiff's allegations demonstrate an occupational liberty interest, Defendants did not fail to provide due process.

*a. Stigma*

First, Defendants argue that Plaintiff has failed to establish violation of an occupational liberty interest because she has failed to allege that she was stigmatized by Defendants' conduct. Defendants note that Plaintiff does not allege that any public official has made any false or defamatory statement about her or the reasons for her termination. Plaintiff responds that the element of stigma does not require a showing of false or defamatory statements.

In situations when the government removes someone from an employment position, a liberty interest may be threatened in one of two ways:

> "(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities."

*Townend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001) (quoting *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985)). Here, Plaintiff argues her liberty interest has been violated by a state

5

imposed stigma, namely the "stop order" precluding her from entering IDOC facilities. Plaintiff argues that Defendants' arguments and authority related to the first prong are not on point.

The Court notes that this case is distinguishable from *Ketelson v. Smith*, No. 06-4008, 2008 WL 2941259 (C.D. Ill. July 25, 2008), discussed by both parties. In *Ketelson*, the plaintiff provided substance abuse counseling to juvenile inmates detained at the Kewanee Youth Center (hereinafter "KYC"). Officials at KYC barred Plaintiff from working in KYC, stating "she had boundary issues that made her unsuitable for a correctional setting." *Id*. at *1. As a result of being barred from KYC, Plaintiff's employer terminated her employment. Ketelson was not barred from entering other correctional facilities, only KYC. As such, in that case, the plaintiff relied on the theory that officials at KYC had implicated her good name and reputation in connection with her termination, and thus violated her occupational liberty. In granting summary judgment for defendants, the court determined that the statement about "boundary issues" was not sufficiently stigmatizing. *Id.* at *5. Here, the Plaintiff's allegations of stigma rely on the "stop order" precluding her from working in any IDOC facility, not on any allegation that Defendants implicated her good name and reputation.

The Court agrees with Plaintiff that stigma, constituting an element of violation of occupational liberty, need not come in the form of a defamatory statement. *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). Because the "stop order" effectively blacklisted Plaintiff from employment in all IDOC facilities, Plaintiff has adequately alleged that Defendants stigmatized her.

b. *Public Disclosure*

Second, Defendants argue that, even if the "stop order" amounts to stigma, Plaintiff does not allege that it was ever disclosed publicly or that it was ever disseminated beyond IDOC. Regardless of what theory a plaintiff uses to demonstrate a threat to her liberty interest, the plaintiff must demonstrate that stigma against her is public, such that the public charges make it "unlikely that anyone will hire [the plaintiff] for a comparable job in the future." *Townsend*, 256 F.3d at 670, fn. 9. Where there has been an alteration of legal status, such as governmental

deprivation of a right previous held, combined with an injury resulting from defamation, this justifies the invocation of procedural due process safeguards. *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005). Where, due to public disclosure of stigma, it has become "virtually impossible" for an individual to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice. *Id*.

Plaintiff cites *Larry v. Lawler*, 605 F.2d 954 (7th Cir. 1978) for the proposition that information not publicly disseminated may form a basis for violation of occupational liberty where it is clear that if any governmental employer inquired they would receive the information. In *Larry*, the plaintiff was rated ineligible for employment in the federal government by the Civil Service Commission. As a result of the Commission's finding, the plaintiff was barred from all federal employment for up to three years. *Id.* at 958. The court determined that this constituted a deprivation of an occupational liberty interest, noting that this restriction constituted a disability foreclosing employment opportunities in a significant sector of the job market. *Id.* at 957-58. The Court agrees with Plaintiff that the "stop order" preventing Plaintiff from working in any IDOC facility is at least somewhat analogous to the ban on federal government employment imposed in *Larry*, though of course a ban from all federal government employment is much broader in scope than an effective ban from employment requiring entry to IDOC facilities.

The Court notes that the "stop order" constitutes an alteration of legal status, which affects Plaintiff's ability to work in any IDOC facility. As such, the Court concludes that Plaintiff has pled facts that indicate she is at least plausibly entitled to relief.

*c. Tangible Loss of Employment Opportunity*

Defendants note that the Fourteenth Amendment protects a person's right to pursue a profession, but does not create a right to work for a specific employer. Defendants contend that Plaintiff's effective definition of her "occupation," limited to teaching in a correctional institutional setting, is too narrow. Plaintiff has not alleged that the "stop order" has prevented her from teaching outside IDOC, or otherwise working as a state employee. Plaintiff relies on

*Ketelson*, noting the court's determination that Ketelson's loss of one specific job did not constitute a deprivation of occupational liberty. *Ketelson*, 2008 WL 2941259, at *6.

Plaintiff alleges that she has lost specific employment opportunities as a result of the continued effect of the "stop order," apart from termination of her employment at Lake Land College. Though Plaintiff does not allege facts that may support her relatively narrow definition of her "occupation," such as training specific to this career path, she is not required to do so at this stage. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (stating a complaint must give fair notice of the claim and the grounds upon which it rests). Plaintiff has alleged that she worked as a vocational education instructor in correctional institutions, she can no longer pursue this type of employment in Illinois, and she lost specific future opportunities in this line of work as a result of the "stop order." These allegations are sufficient to satisfy this Court that Plaintiff has stated a claim for which she is plausibly entitled to relief.

*d. Process Due*

Defendants argue that, because none of them were Plaintiff's employer, none of them could have provided her with procedural due process in connection with her termination from Lake Land College. Defendants cite *Horstmann v. St. Clair County*, 295 Fed.Appx. 61, 2008 WL 4206333 (7th Cir. 2008) for the proposition that, because they were not Plaintiff's employer, they were not and are not in a position to provide Plaintiff the relief she seeks. However, in *Hortmann*, the plaintiff alleged deprivation of a property interest in his continued employment. Here, Plaintiff's complaint stems from a lack of opportunity to challenge the "stop order" authorized by Defendant Anglin, as opposed to termination of her employment. The Court therefore concludes that *Hortmann* is not on point, and rejects Defendant's argument.

*2. Qualified Immunity*

Defendants argue that Count I is barred by qualified immunity because the alleged conduct does not violate clearly established statutory or constitutional rights. Under the doctrine of qualified immunity, executive officials are shielded from liability for civil damages when they exercise their discretion, as long as their conduct does not violate a "clearly established" constitutional or statutory right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

Plaintiff responds that, even if qualified immunity operates as a bar to damages, the doctrine of qualified immunity does not bar a claim for injunctive relief. *Moss v. Martin*, 614 F.3d 707, 712 (7th Cir. 2010). Plaintiff has requested injunctive relief; specifically, she asks this Court to order that the "stop order" be rescinded.

Because qualified immunity does not bar Plaintiff's claim where Plaintiff has requested injunctive relief, this Court concludes that Count I cannot be dismissed on the basis of qualified immunity. With this, the Court finds that Defendants should not be immune from suit, but the Court does not reach the issue of what remedies are potentially available to Plaintiff.

*3. Allegations Required to Bring Suit Under § 1983*

Defendants make two additional arguments that Plaintiff has failed to state a claim. First, Defendants argue that Plaintiff has failed to allege personal involvement of defendants sued in their individual capacity. Second, Defendants argue that Plaintiff may not bring suit against defendants in their official capacities.

First, Defendants argue that Plaintiff has failed to allege the personal involvement of any defendants beyond Defendant Anglin. Defendants state that Plaintiff fails to allege how Defendants Reinhart or Taylor participated in the deprivation of her rights. Defendants argue that where a plaintiff has failed to allege the personal involvement of a defendant, plaintiff has failed to state a claim. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). An individual cannot be held liable in a § 1983 action unless that individual caused or participated in an alleged

9

constitutional deprivation. *Id*. This Court notes, however, that Plaintiff does allege that Defendant Reinhart individually participated in the alleged constitutional deprivation (#1, p. 4, ¶¶ 19-21), and Defendant Taylor is not sued in her individual capacity.

Second, Defendants argue that Plaintiff's claims against Defendants Anglin and Taylor in their official capacities must be dismissed. Where a plaintiff brings suit against a defendant in his official capacities, the real party in interest may be the state, in which case the suit is barred by the Eleventh Amendment. *Kroll v. Bd. of Trustees*, 934 F.2d 904, 907-08 (7th Cir. 1991). In order to bring a § 1983 claim against defendants in their official capacities, the claim must fall within one of three recognized exceptions. *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). Under one of these exceptions, a plaintiff may bring suit against a state official in his official capacity where plaintiff seeks prospective equitable relief for ongoing violations of federal law under the *Ex Parte Young* doctrine. *Id*. (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). Stated another way, suits against individuals in their official capacity for retrospective relief in the form of money damages are barred by the Eleventh Amendment, but claims for prospective relief in the form of an injunction or declaration are not barred. *Kroll*, 934 F.2d at 907-08.

Plaintiff argues that she may bring her claim against Defendants Anglin and Taylor in their official capacities under the *Ex Parte Young* doctrine. Plaintiff notes that the "stop order" is still in effect, and indicates that this enough to establish an "ongoing violation" of her constitutional rights. Defendants argue that the Seventh Circuit has held that an employee who is deprived of due process in connection with termination of employment does not suffer an ongoing violation of rights. *Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002). In that case, the plaintiff had been demoted without a proper hearing. The Court determined, in that case, that the underlying procedural due process claim could not be reasonably construed as "ongoing." *Id*. However, *Sonnleitner* is distinguishable from Plaintiff's claim. There, the court noted that the plaintiff was eventually given the opportunity to refute claims against him, and a personnel commission determined his demotion was improper. *Id*. Here, Plaintiff alleges that she still has not had any effective opportunity to challenge the "stop order." Furthermore, despite the ruling

in *Sonnleitner*, the Seventh Circuit has continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional guarantee, he may maintain a suit for reinstatement. *See Evoy v. Ill. State Police*, 429 F.Supp.2d 989, 1001 (N.D. Ill. 2006) (citing *Levenstein v. Salafsky*, 414 F.3d 767, 772 (7th Cir. 2005)).

*B. Count III - Retaliation in Violation of the First Amendment*

Defendants move this court to dismiss Count III as to all Defendants, except for Defendant Anglin. Plaintiff does not object. (#18, p. 10.) As such, this Court recommends that Count III be dismissed with respect to Defendants Taylor, Reinhart, and Foster.

### IV. Summary

For the reasons stated above, this Court recommends that Defendants' Rule 12(b)(6) Motion to Dismiss Counts I and III **(#12)** be be **DENIED** with respect to Count I and **GRANTED** with respect to Count III. Also, given agreement of the parties, Defendant Randle should be dismissed from the suit in its entirety.

Last, the Court notes that, after this present motion to dismiss was fully briefed, Plaintiff filed a First Amended Complaint (#19), without leave of court. The amended complaint adds an additional count against Defendant Anglin. Given the timing of this filing, Plaintiff was only entitled to amend her complaint with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Thus, this Court has entered a text order striking Plaintiff's amended complaint. Plaintiff may refile her amended complaint at a later time if she is given leave of court.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986)**.**

ENTER this 25th day of April, 2011.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
